IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EDREES OMARI,
          *Petitioner*,

   v.

TODD LYONS, *et al.*,
          *Respondents*.

1:25-cv-2483-MSN-WBP

## ORDER

In this matter, Edrees Omari ("Petitioner"), a citizen of Afghanistan, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241 claiming that he has been illegally detained by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, he alleges that his continued immigration detention violates the Immigration and Nationality Act (Count I), the bond regulations (Count II), and his Fifth Amendment due process rights (Count III).

Petitioner is currently detained at the Farmville Detention Center, in Farmville Virginia. He has sued Todd M. Lyons, the acting director of ICE; Joseph Simon, the Washington Field Office Director of ICE Enforcement and Removal Operations ("ERO"); Kristi Noem, the DHS Secretary; and Pamela Bondi, the Attorney General (collectively, "Federal Respondents"). He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center.

The Petition initially framed the permissibility of Petitioner's detention as a matter of whether he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or if he was detained under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing that Federal Respondents were allegedly withholding on the basis of their policy and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). ECF 1. In response, the Federal Respondents aver that Petitioner is actually

subject to mandatory detention under 8 U.S.C. § 1225(b)(1). For the reasons that follow, the Court will GRANT the Petition as to Count III and ORDER that Petitioner be immediately released from detention.

## I.   BACKGROUND

### A.  Legal Framework

"Every year, hundreds of thousands of aliens are apprehended at or near the border attempting to enter this country illegally." *Dep't of Homeland Sec, v. Thuraissigiam*, 591 U.S. 103, 106 (2020). Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id*. If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration" in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Thuraissigiam*, 591 U.S. at 110.

In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But even so, the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)).

Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts." 8 C.F.R. § 212.5(d) (noting that appropriate bond or "reasonable assurances that the alien will appear at all hearings, and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) <u>if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.</u>
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, <u>upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated</u> upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest

3

requires that the alien be continued in custody.

8 C.F.R. § 212.5(e) (emphasis added).

### B.  Factual History

Petitioner is a citizen of Afghanistan. ECF 1 ¶ 15. On December 21, 2022, Customs and Border Protection agents encountered Petitioner near El Paso, Texas after he crossed into the United States from Mexico. ECF 4-1 ¶ 6. At that time, the agents determined that Petitioner was arriving in the United States without being admitted or paroled and processed him for expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A). *Id.* Accordingly, on December 23, 2022, Petitioner was served with an order of removal, ECF 8-1 at PageID# 78, however, before he could be removed, Petitioner expressed a credible fear of returning to his country and was referred to USCIS for a credible fear interview under 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting his credible fear interview, Petitioner was detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). ECF 4-1 ¶ 7.

USCIS interviewed Petitioner on March 7, 2023 and determined that Petitioner had a credible fear of persecution in Afghanistan by the Taliban on the basis of his family's work with the U.S. military and the former government of Afghanistan. ECF 8-1 at PageID# 64-77, 81-83. As a result, USCIS vacated Petitioner's removal order, issued a Notice to Appear charging Petitioner with inadmissibility under 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I), and placed him into regular removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* at PageID# 61; ECF 4 at 5; 8 C.F.R. § 235.6(a)(1)(i). Two days later, on March 9, 2023, ICE issued to Petitioner an "Interim Notice Authorizing Parole under Section 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A)), stating in part:

> Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion. ICE may also terminate parole on notice prior to the automatic termination date. Parole is entirely within the discretion of ICE and can

be terminated at any time and for any reason. Your parole is not valid for work authorization and is not an admission in lawful status.

ECF 8-1 at PageID# 109 (emphasis added). Thus, under this notice, Petitioner's parole purportedly terminated on March 3, 2024, but nothing in the record before the Court suggests that DHS contacted Petitioner at the end of the one-year period and he appears to have remained out of custody on parole without incident until he was arrested by ICE on December 16, 2025. ECF 4-1 ¶ 10.

On May 16, 2025, an Immigration Judge denied Petitioner's application for relief and ordered Petitioner be removed from the United States. *Id*. ¶ 9. Petitioner timely filed an appeal to the BIA on June 3, 2025, and his appeal remains pending. *Id*.

## II.   DISCUSSION

The central question presented in this Petition is whether Petitioner's continued detention violates the Fifth Amendment. Federal Respondents submit that he is properly subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), that this Court lacks jurisdiction over Petitioner's claims, and that Petitioner has received all of the process to which he is due. ECF 4.

This Court disagrees. The Court observes that Judge Brinkema's opinion in *Pineda-Berrios v. Lyons et al*, ECF 13, No. 1:25-cv-2332-LMB-LRV (E.D. Va. Feb. 11, 2026), concerns facts and law that are materially indistinguishable from the case at hand, and the Court adopts and incorporates the reasoning in *Pineda-Berrios* in whole. The Court is not deprived of jurisdiction to consider the revocation of Petitioner's parole because DHS does not have pure discretion to revoke parole. *Id*. at *7. Fundamentally, Federal Respondents have effectively revoked Petitioner's parole and detained him but without any notice, hearing or individualized consideration of Petitioner's circumstances or whether the purposes of parole had been accomplished that the

regulations and due process require. *Id*. at 9-14 & n.3 (collecting cases); *see, e.g.*, *Perez v. LaRose*, 2025 WL 3171742, at *4-5 (S.D. Cal. Nov. 13, 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416-20 (S.D.N.Y. Sept. 12, 2025). Thus, Petitioner's current detention is unlawful and Federal Respondents must release him.

Accordingly, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED as to Count III; and it is further

ORDERED that Federal Respondents release Petitioner from custody with all of his personal property subject to the conditions of his existing parole, except for the one-year limitations, no later than 12:00 p.m. on February 18, 2026; and it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the one-year limitation; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e).

The Clerk of Court is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, to forward a copy of this Order to counsel of record, and to close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

February 17, 2026
Alexandria, Virginia

6